195 Ill. App.3d 919 (1990)
552 N.E.2d 1107
In re T.B., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
R.B., Respondent-Appellant).
No. 5-89-0223.
Illinois Appellate Court  Fifth District.
Opinion filed March 13, 1990.
*920 *921 Richard G. Koritz, of Ford & Koritz, of Sesser, for appellant.
Terry M. Green, State's Attorney, of Benton (Kenneth R. Boyle, Stephen E. Norris, and Ellen Eder Irish, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Robert L. Miller, of Benton, guardian ad litem.
Judgment affirmed.
JUSTICE RARICK delivered the opinion of the court:
Respondent appeals a decision of the circuit court of Franklin County adjudicating his minor child dependent and neglected, and authorizing the guardianship administrator of the Department of Children and Family Services (DCFS) to consent to the adoption of the minor. We affirm.
On February 9, 1987, the State filed a petition for adjudication of wardship, alleging that T.B., a minor, was being physically abused by his mother. A shelter care hearing was held the next day, and the court found probable cause to believe T.B. was an abused child and placed temporary guardianship with DCFS, with T.B.'s uncle having temporary custody.
On March 12, 1987, an adjudicatory hearing was held. The court found T.B. to be an abused minor in that he was subject to excessive corporal punishment. A dispositional hearing was held on April 13, 1987. At that time the court found T.B. to be dependent and neglected but specifically declined to find him abused. On August 5, 1987, the court entered an amended adjudication order finding T.B. to be dependent and neglected and simultaneously entered a dispositional order placing guardianship of T.B. with DCFS.
A review hearing was held on September 17, 1987, at which time the court admonished the DCFS and the State to consider petitioning to terminate the parental rights of respondent and his wife. The court again admonished the State at another review hearing on March 10, 1988, indicating that it was awaiting a petition to terminate and that it was prepared to find probable cause for termination.
On May 5, 1988, DCFS filed a supplemental petition for the appointment of a guardian with the power to consent to adoption. The petitioner alleged that T.B.'s parents were unfit as defined in section 1-(D)(m) of "An Act in relation to the adoption of persons, and to repeal an act therein named" (Ill. Rev. Stat. 1987, ch. 40, par. *922 1501(D)(m)) as they had failed to make reasonable efforts to correct the conditions which led to T.B.'s removal, or reasonable progress toward the return of the child. A hearing on the petition for termination of parental rights was held on August 8-9, 1988. Beverly Chaplin, a DCFS caseworker, testified that T.B.'s parents were cooperative and tried to complete most of the client service plan established for the parents, but that they had completed very few of the tasks and objectives set out in the plan. Anita Lloyd, a family counselor, testified that T.B.'s father had made no progress but that it was conceivable that T.B. could live with him if support services were provided. At the conclusion of the hearing, the court stated that it wanted to review the mental health records of respondent and his wife and that it would issue the necessary orders to obtain those records. The court indicated that it would enter a written order after reviewing those records.
On February 2, 1989, DCFS filed another supplemental petition which sought the appointment of DCFS as guardian without specifically requesting the power to consent to adoption. The second supplemental petition was a fill-in-the-blank type form petition. The body of the petition contained a clause stating that it was in T.B.'s best interest that DCFS "continue to act as guardian of said minor" with/without the power to consent to adoption and the prayer for relief requested that DCFS continue to act as guardian "with/without the power to consent to adoption." It is clear from the form of the petition that the typist was to strike either "with" or "without," depending on DCFS' intent. The word "with" was struck out in this case. The trial court entered judgment on February 10, 1989. The court found by clear and convincing evidence that T.B.'s parents were unfit and appointed DCFS as guardian with the power to consent to adopt. From this judgment, T.B.'s father appeals.
Respondent first argues that the trial court exceeded its authority in finding T.B. to be neglected and dependent. The petition for adjudication of wardship, he maintains, alleged that T.B. was physically abused, but made no allegations regarding neglect or dependency. The trial court initially adjudicated T.B. to be physically abused. Although the State filed no amended petition, the trial court at the dispositional hearing entered an amended adjudication order finding T.B. to be neglected and dependent, but stated that it would not make a specific finding of physical abuse. As the pleadings alleged only physical abuse, respondent argues, the trial court was without authority to enter a finding of neglect and dependency.
An examination of the record reveals that respondent did not object *923 at the dispositional hearing to the trial court's finding of dependency and neglect, nor was the matter raised at any of the subsequent review hearings. No mention was made until the August 8-9, 1988, hearing on the petition to terminate parental rights over one year later. At that time, respondent's attorney orally moved to dismiss the petition to terminate, arguing that if T.B. had been adjudicated abused, the statute relied upon by the State was inapplicable. The issue was not pursued, and the trial court did not rule on the motion.
 1 An objection that an issue was not raised in the pleadings can be waived by the objecting party's conduct at trial, or by the introduction of evidence on the issue. (See Forrester v. Patrick (1988), 167 Ill. App.3d 105, 520 N.E.2d 1188.) In the present case, respondent failed to object at the conclusion of the dispositional hearing when the court indicated that it would find T.B. neglected and dependent. The court indicated that it had sufficient evidence to make such a finding, and no evidentiary objections appear in the record. We therefore find this issue to be waived.
 2 Respondent next argues that the trial court erred in admonishing the State to file a petition for termination of parental rights. At a review hearing on September 21, 1987, the court indicated that it wanted something "more permanent" done and that it would take a petition to terminate for that to occur. At a subsequent review hearing on March 10, 1988, the court again indicated that a petition for termination should be filed and that such a petition would be in T.B.'s best interests. The court went on to admonish the State to file a petition to terminate. Respondent argues that these statements at the very least call into question the trial court's impartiality. We disagree. A careful review of the court's comments made during these review hearings reveals no bias or partiality, but rather a sincere and legitimate concern for T.B.'s welfare. The court's comments reflect a realistic assessment of the situation and a desire to have a final determination made.
Respondent also argues that the supplemental petition does not state a cause of action. If, respondent maintains, this court finds that the trial court erred in finding neglect and dependency where the original petition for adjudication of wardship alleged physical abuse, then there can be no cause of action as the statute providing for the termination of parental rights due to abuse requires two or more findings of abuse and there is no evidence in the record that respondent ever abused T.B. Alternatively, respondent argues, if this court concludes the finding of neglect and dependency to be proper, then there *924 can be no cause of action because section 1-D(m) requires the expiration of a one-year period after the adjudication of dependency and neglect in order to afford the parents an opportunity to make reasonable progress before filing of a petition to terminate parental rights. In the present case, respondent maintains, only nine months elapsed between the adjudication of neglect and dependency and the filing of the petition to terminate.
Having concluded that the finding of neglect and dependency was proper, we must address respondent's alternative argument that the petition to terminate parental rights did not state a cause of action because 12 months had not elapsed from the time T.B. was adjudicated neglected and dependent.
 3, 4 Section 1(D)(m) provides that a parent may be found "unfit" if the parent fails
"to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor under Section 2-4 or dependent minor under Section 2-5 of the Juvenile Court Act." (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(m).)
In terminating the parental rights of respondent and T.B.'s mother, the trial court specifically found both that they failed to make reasonable efforts to correct the condition which led to T.B.'s removal, and that they failed to make reasonable progress toward the return of T.B. within 12 months of the adjudication of neglect and dependency. T.B. was adjudicated neglected and dependent on April 13, 1987, and a docket entry was made to that effect. The written order was entered on August 5, 1987. The petition to terminate was filed on May 5, 1988. Respondent argues that pursuant to Supreme Court Rule 272 (107 Ill.2d R. 272), the written order is the actual adjudication of neglect and dependency and that only nine months elapsed between entry of the written order and the filing of the petition to terminate. Again, we disagree. Supreme Court Rule 272 was promulgated in response to difficulties which arose regarding the timeliness of appeals where the oral announcement of judgment antedated the written judgment order. (West v. West (1979), 76 Ill.2d 226, 390 N.E.2d 880.) Timeliness of appeal is not an issue here. Further, Rule 272 refers to "final judgments." An adjudicatory order is not contemplated as a final judgment and is not appealable except where no dispositional order is entered within 90 days. (107 Ill.2d R. 662(a).) We hold that for purposes of the 12-month period in section 1(D)(m), the adjudication *925 order is entered as of the date of the docket entry. In this case, the order adjudicating T.B. dependent and neglected was entered on April 13, 1987, approximately 13 months before the filing of the supplementary petition.
 5 Respondent also argues that the supplemental petition filed on February 2, 1989, by the guardianship administrator of DCFS was an admission by DCFS that it no longer sought authority to consent to adoption. We do not agree. The first supplemental petition for the appointment of a guardian was filed on May 5, 1988, and specifically sought the power to consent to adoption. Unlike the second petition, filed only days before the final judgment, the first petition was not a "form" petition. Based on this, respondent was well aware that DCFS sought termination of his parental rights. The brief of the guardian ad litem clearly demonstrates that DCFS sought the power to consent to adoption, and prayed that such power be granted. Also, respondent filed a brief defending against the petition. Viewing the record as a whole, especially the "fill-in-the-blank" nature of the second petition, we find that the second petition's indication that DCFS sought guardianship without the power to consent to adoption was in all probability a scrivener's error, but in any event it does not constitute an admission by DCFS that it no longer sought the power to consent to adoption.
 6 Respondent further maintains that the trial court's judgment fails to terminate his parental rights because the order granting DCFS the power to consent to adoption does not specifically state that parental rights are terminated. A plain reading of the judgment demonstrates that the court determined respondent and his wife to be unfit parents and that it was in T.B.'s best interest that DCFS be given guardianship of T.B. with the power to consent to adoption. While it would have been preferable for the court to specifically state that it was terminating the parental rights of respondent and his wife, no "magic words" are necessary to terminate parental rights and respondent cites no authority so holding. Given the serious nature of proceedings to terminate parental rights, we would strongly urge that in the future orders terminating parental rights include specific language to that effect. We find the trial court's order which did specifically appoint a guardian with specific power to consent to adoption was sufficient to terminate the parental rights of respondent and his wife. See In re R.M.S. (1989), 187 Ill. App.3d 41, 542 N.E.2d 1323.
 7 Finally, respondent argues that the evidence was insufficient to prove him an unfit parent. To terminate parental rights, parental unfitness must be found by clear and convincing evidence. (In re *926 Wright (1986), 142 Ill. App.3d 809, 492 N.E.2d 252.) A review of the record leads us to the conclusion that there is sufficient evidence to meet the clear and convincing standard. The record shows that respondent had a long-standing history of mental instability, having been admitted for psychiatric care twice and having made repeated references to suicide. He also suffered from what was described as a psychosexual disorder manifesting itself as transvestism and, at the time of the hearing on the supplemental petition, did not have a permanent address, having changed addresses frequently in the months preceding the hearing. Further, respondent demonstrated an almost complete lack of parenting skills and showed little progress despite extensive counselling offered by numerous State agencies. We cannot say that the trial court's conclusion was against the manifest weight of the evidence. In re Perz (1988), 173 Ill. App.3d 922, 528 N.E.2d 238.
For the foregoing reasons, the judgment of the circuit court of Franklin County is affirmed.
Affirmed.
CHAPMAN and GOLDENHERSH, JJ., concur.